RECEIVED
IN LAKE CHARLES, LA
SEP 2 6 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| UNITED STATES OF AMERICA | : | DOCKET NO. 2:06 CR 20130-01 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| LARRY ANDREW COX | : | MAGISTRATE JUDGE WILSON |

### MEMORANDUM RULING

Having considered the Presentence Report ("PSR"), this court finds that an upward departure and variance[1] from the United States Sentencing Guidelines is warranted in this case. The advisory sentencing guidelines establish that the defendant's guideline range is 18 to 24 months, which this court finds is wholly inadequate for the reasons stated herein.

The court finds that an upward departure under U.S.S.G. §5K2.0(a)(1)(B) is supported by the facts of this case. Additionally, a variance under 18 U.S.C. § 3553(a) is justified because of the nature and circumstances of Cox's conduct and the history and characteristics of his past.

"Both a district court's post- *Booker* sentencing discretion and the reasonableness inquiry on appeal must be guided by the sentencing considerations set forth in § 3553(a)."[2] These factors include the nature and circumstances of the offense, the defendant's history and characteristics, and

---

[1] Sentences based on both upward departures from the guidelines range and non-guidelines sentences, or "variances" from the guidelines have been upheld by the court. *See United States v. Mejia-Huerta*, 480 F.3d 713, 721 (5th Cir.2007), *petition for cert. filed*, 75 U.S.L.W. 3585 (U.S. Apr. 18, 2007) (No. 06-1381); *United States v. Smith*, 440 F.3d 704, 706-07 (5th Cir.2006).

[2] *United States v. Smith*, 440 F.3d 704, 706 (5th Cir.2006).

the need for the sentence to reflect the seriousness of the offense. § 3553(a)(1), (2). A district court must also consider these factors when imposing a sentence that represents an upward departure from the advisory guidelines range. *United States v. Zuniga-Peralta,* 442 F.3d 345, 347 (5th Cir.), *cert. denied,* 126 S.Ct. 2954 (2006).

Pursuant to U.S.S.G. 5K2.0(a)(3), an upward departure may be warranted in an exceptional case. Of course, the range itself is only advisory at this point in time. A departure may be warranted even though the circumstances that form the basis for the departure are taken into consideration to some degree in determining the guideline range. The departure is warranted if the Court determines that the circumstances in a particular case are present to a degree substantially in excess of that which ordinarily would be involved in the offense of the kind confronting the Court. The vulnerability of the victims[3] and the seriousness of the impact on those victims was not taken into account to the extent those factors exist in this case.

On June 1, 2005, a 13 year old male juvenile reported to the Fort Polk Military Police that he had been sexually assaulted in the men's locker room of the 50-meter pool on base. The juvenile reported that he was using the restroom when an adult white male approached him and touched his penis without his consent. The juvenile stated that after swimming he entered the men's locker room to take a shower. After entering the shower, the adult male entered the showers and kept looking at the juvenile. After finishing his shower, the juvenile exited the shower and dressed. The adult male got out of the shower wearing only a towel and began shaving while the juvenile was dressing. The juvenile then went to use the urinal. The adult male stepped to the urinal next to him. The adult male grabbed the juvenile's penis and began manually manipulating him. The juvenile told the

---

[3]   *U.S. v. Rajwani,* 476 F.3d 243, 250 (C.A.5 (Tex.), 2007).

adult to stop two times before the adult male finally stopped. The juvenile left the locker room and the police were called.

The juvenile provided a description of the adult. Officers questioned several people at the pool, including several lifeguards, but no one remembered seeing anyone who matched the juvenile's description of the adult male. The juvenile was shown several photographic lineups to no avail.

On March 17, 2006, an 18 year old male reported to the Fort Polk Military Police that an unknown white male had exposed himself to the 18 year old in the showers of the Wheelock Gym. The incident occurred on March 15, 2007. The 18 year old reported that he was at the gym on March 14 and 15. On March 14, he went into the locker room to shower. As he was showering, the adult male entered the shower and was staring at him. He felt uncomfortable and promptly left the area. The following day, he was showering when the same adult male entered the shower and began staring at him again. He looked at the adult male and noticed that he had an erection and was masturbating while watching the 18 year old take a shower. The 18 year old immediately left the area.

The 18 year old was presented with photo lineups and he identified the defendant as the person who exposed himself on March 15, 2006. On that same day, the officers asked the 13 year old from the June 1, 2005, incident to view these photo lineups. The juvenile identified the defendant as the person who assaulted him in the restroom.

On March 28, 2006, Cox was interviewed about these incidents. When questioned about the March 15 incident, he acknowledged that he "occasionally" masturbates in the shower at the gym. He stated that the shower curtains were normally closed when he did this, but they were not closed on that day and someone could have seen him.

When questioned about the June 1 incident with the 13 year old, the defendant admitted that he was involved. At first Cox denied ever touching the young man. Then, his story changed. He stated that he was masturbating near the sinks and urinals when the minor walked up next to him. He stated that the minor briefly walked away and then returned with an erection. The minor allegedly stood next to Cox and turned his body in such a manner that Cox believed that the minor wanted sexual contact. Cox stated that he then used his hands to manipulate the young man until he achieved an orgasm.

The 13 year old was an extremely vulnerable victim, yet he was not the only victim of the defendant's act. At the time of this offense, the 13 year old's father was serving his third tour of duty in Iraq. One of the supposed advantages of living on or near a base is that when you are deployed, your family will be safe. The defendant is a predator who laid in wait on a military base, looking for young men that he could abuse sexually. With the high number of troops deployed, there was a high probability that the boy's father was not on base. The court cannot even begin to describe how frustrated and angry this young man's father must have been when he heard that the defendant had preyed upon his young son. Because he was doing his military duty protecting our country, he could not be stateside to protect his son. This is the most egregious component of this series of predatory acts.

The defendant's behavior with the 18 year old and the 13 year old establishes a pattern of conduct that has been ongoing for years. Reports from the U.S. Army Crime Records Center indicate that on August 3, 1992, a patient at Bayne-Jones Army Community Hospital reported that he woke up in his hospital bed to find the defendant performing oral sex on him. The defendant was a nurse at the time. This is the first recorded vulnerable victim in this pattern of abuse. The victim

told officers that he thought that he was having a dream only to discover when he woke that the defendant was performing oral sex on him. The investigating officers and prosecuting attorney in the Staff Judge Advocate's Office assumed that the incident was consensual even though the victim reported the act to hospital personnel.

The extent of the psychological impact on the 13 year old is unclear as he has not received any psychological counseling. His mother states that he will not talk about the incident and that he "just tries to block it out."[4] He refuses to return to that swimming pool and is "very wary of others around him."[5] He is very modest and does not want anyone around him when he is changing clothes. His mother reports that he does not want to talk about the incident and he does not want to see a counselor.

This court finds that there has been an abject failure of the guidelines to address this type of predatory abuse and the potentially severe psychological impact on minor victims and their deployed parents.

It has always been the case-even under the mandatory Guidelines system-that the appropriate penalty can take into account the nature of the victims.[6] Understandably so, because this factor

---

[4] PSR ¶ 12.

[5] *Id.*

[6] *See* U.S.S.G. § 3A1.1(b)(1) & cmt. (permitting upward adjustment "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim," who is "unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct"); *see also United States v. Reis,* 369 F.3d 143, 152 (2d Cir.2004) (affirming an upward departure from the Guidelines which was based, in substantial part, on the "victim's young age, which, *inter alia,* made the likelihood of death from choking more foreseeable").

affects the culpability of the defendant, and "whether additional deterrents are necessary."[7] It would seem that the locality in which a crime is committed is another, similar, circumstance that can affect both the harm caused by a crime, thus the culpability of the criminal, and the effectiveness of a given deterrent.[8]

An upward departure may be warranted based upon offense characteristics or offender characteristics of a kind, or to a degree, not adequately taken into consideration in determining that range. The advisory guideline sentence of 18 to 24 months under-represents the seriousness of the offense because the defendant preyed upon the vulnerable for his own sexual gratification.

A variation pursuant to 18 U.S.C. § 3553(a) is also warranted.

§ 3553(a) factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed ... medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

---

[7] *United States v. Crispo*, 306 F.3d 71, 83 (2d Cir.2002).

[8] *U.S. v. Cavera*, 2007 WL 1628799, *8 (C.A.2 (N.Y. 2007)).

(4) the kinds of sentence and the sentencing range established for-

>(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5) any pertinent policy statement ...;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct ....

18 U.S.C. § 3553(a) (2000).

The nature and circumstances of this offense and the history and characteristics of the defendant make it clear that a severe sentence is mandated. This is a serious offense and the 18 to 24 months imprisonment suggested by the Guidelines is not a sufficient deterrent to this predatory behavior. A more severe sentence is required to protect the public from further criminal acts of the defendant.

An additional serious concern of the court is the fact that the defendant has two minor sons, ages 4 and 14. His wife states that she and the children need the defendant and she wants him to return home. The defendant's pattern of predatory sexual acts with minor boys certainly gives the court reason to question the safety of his own minor children.

Considering the pattern of conduct, the defendant's propensity to target vulnerable victims and the need to protect the public from further crimes of this defendant, the court finds that any

7

sentence up to the statutory maximum of 15 years is reasonable.

Lake Charles, Louisiana, this 25 day of September, 2007.

/s/ Patricia Minaldi
PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE